IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAURA MURRAY,

          Plaintiff,

          v.

THE BOROUGH OF MOUNT OLIVER.

          Defendant.

:
:
:
:
:    Civil Action No. 2:13-cv-01356-DSC
:
:
:    JURY TRIAL DEMANDED
:
:
:
:

## MOTION TO COMPEL DISCOVERY RESPONSES AND TO CONTINUE PERIOD TO COMPLETE FACT DISCOVERY FOR A LIMITED PURPOSE

Plaintiff Laura Murray ("Plaintiff"), by and through the undersigned attorney, respectfully moves this Court for the entry of an Order compelling The Borough of Mount Oliver ("Defendant") to produce (i) further and more specific responses to Plaintiff's First Interrogatories, and (ii) documents responsive to Plaintiff's requests. Plaintiff also requests that this Court continue the fact discovery period for the limited purpose of allowing Plaintiff to complete depositions, as they have been postponed due to Defendant's incomplete discovery responses. In support thereof, Plaintiff states the following:

### *Introduction*

1.     Plaintiff brings this motion to compel Defendant's further responses to Plaintiff's discovery requests.

2.     The undersigned counsel hereby certifies that he made good faith efforts to resolve this dispute informally.

3.     However, Defendant has persisted in its refusal to produce responsive documents and complete responses, necessitating this Court's intervention.

4.      Further, in refusing to provide further responses and documents, Defendant's counsel has attempted to justify its conduct by accusing Plaintiff's counsel of failing to complete discovery in a timely fashion.  Accordingly, Plaintiff is forced to include a detailed statement of the matter's procedural history in submitting this Motion.

## Procedural Background to this Motion

5.      Plaintiff is a former Mt. Oliver Borough police officer.  In her Complaint, filed on September 16, 2013, Plaintiff alleges that she was harassed, denied promotion, and terminated in retaliation for opposing unlawful discrimination and harassment.  (ECF Doc. No. 1.)

6.      Further, Plaintiff alleges that Mt. Oliver Borough terminated her without a "*Loudermill* hearing," in violation of her constitutional due process, *i.e.*, without providing her notice of the alleged basis for her termination, a description of Mt. Oliver Borough's evidence against her, and an opportunity for Plaintiff to respond. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985); *Andrekovich v. Chenoga*, 2:11-cv-1364, 2012 WL 3231022 (W.D. Pa. Aug. 6, 2012) (Cercone, J.).

7.      During the February 28, 2014 Case Management Conference, this Court suggested that the parties conduct limited early discovery prior to an early mediation session. While Plaintiff's counsel required only minimal discovery prior to mediation, Defendant's Counsel explained that one set of written discovery, and the deposition of Plaintiff Murray, would be required for a productive mediation.

8.      The parties then exchanged Initial Disclosures, and the Borough propounded written discovery and deposed Plaintiff Murray, with a deadline to complete the ADR process by June 6, 2014, and fact discovery by July 28, 2014. (ECF No. 15, 16.)

9.      At the June 5, 2014 mediation before Mediator Maria Danaher, the parties did not resolve the matter.  However, upon notice that the parties had agreed to continue the ADR process, this Court ordered the parties to "continue to participate in the ADR session until such time as the neutral has completed the same." (*See* June 6, 2014 text-only Order.)

10.     During a telephone call on or about June 27, 2014, the parties discussed the Court's June 6, 2014 Order and concluded that it required the parties to continue the ADR process, and to refrain from continued discovery until the ADR process had completed.

11.     In emails on July 14 and July 25, 2014 email, the parties' counsel again confirmed their understanding that discovery was "on hold" pending completion of the ADR process, and that the parties would need "a new discovery order" from this Court.  (The aforementioned email correspondence is attached as Exhibit A.)[1]

12.     The parties continued good faith efforts to resolve the matter, until they reached an impasse on July 30, 2014.

13.     On July 31, 2014, Plaintiff submitted to this Court an unopposed motion to continue the discovery period.  (ECF Doc. 18.)

14.     On August 11, 2014, this Court issued a case management order re-opening discovery until November 14, 2014. (ECF Doc. 19.)

### *Plaintiff's Efforts to Resolve Discovery Disputes Informally*

15.     On August 11, 2014, Plaintiff served interrogatories and document requests. Defendant's responses were due on or before September 15, 2014. (Plaintiff's discovery requests are attached as Exhibit B.)

---

[1] Exhibit A contains confidential settlement correspondence.  This correspondence is submitted to counter Defendant's allegation of undue delay, and not submitted to prove the validity of Plaintiff's claim.  *See* Fed. R. Evid. 408(b) (settlement negotiations admissible for purpose of "negating a contention of undue delay").  Nevertheless, out of respect for the generally confidential nature of settlement discussions, portions not relevant to this motion have been redacted.

16.     Without requesting the courtesy of an extension, Defendant waited until September 26, 2014 to serve its interrogatories responses and document production, which Plaintiff's counsel received on September 30, 2014. (Defendant's written responses to Plaintiff's discovery requests are attached as Exhibit C.)

17.     Two days later, Plaintiff's counsel sent a letter regarding the deficiencies in Defendant's responses, namely, that the interrogatory responses were unverified, vague and evasive, and that the document production was obviously incomplete.  The letter also noted that depositions of Defendant's representatives, which had been scheduled for October 14 and 15, would be postponed until complete responses were provided.  (Plaintiff's counsel's October 2, 2014 letter is attached as Exhibit D.)

18.     Defendant's counsel responded on October 6, 2014.  In his response, Defendant's counsel inaccurately recounted this case's procedural history to suggest that Plaintiff's counsel had improperly delayed discovery, as if this alleged delay justified Defendant's incomplete responses.  (Defendant's counsel's October 6, 2014 letter is attached as Exhibit E.)[2]

19.     Regarding the substantive issues, Defendant's counsel derided the request for verification of Defendant's interrogatory responses, and refused to produce additional responsive documents. The response further claimed that a request for actual detail in interrogatory responses is "beyond the scope of Rule 33," and that Plaintiff's counsel should obtain that information through depositions instead. (*Id.*)

20.     Defendant's counsel closed the letter by declaring, unilaterally, that "we are not postponing the depositions . . . . If you do not intend to depose them, I will." (*Id.*)

---

[2] Defendant's counsel also suggests that Plaintiff's counsel was dilatory or improper in scheduling depositions. (Exh. D, at p. 2.) To the contrary, Plaintiff's counsel provided over a month's advance notice to accommodate the work schedules of Mt. Oliver Borough council members, and offered deposition dates for the entire week of October 6, and the entire week of October 13.

21.     On October 8 and 9, the parties' counsel corresponded further by email in an effort to resolve the discovery dispute.  The parties were able to resolve some, but not all, outstanding discovery issues.  (Email correspondence between the parties' counsel is attached as Exhibit F.)

22.     Accordingly, Plaintiff respectfully requests that this Court compel further responses and production, as described below.

### Defendant's Interrogatory Responses

#### Interrogatory No. 6

23.     Plaintiff's Interrogatory No. 6 asks whether Defendant contends that Plaintiff was provided with oral or written notice of the bases for her termination, prior to her termination, and if so, what facts support that contention. (Exh. A.)

24.     In response, Defendant response evades the issue of whether Defendant contends that it provided Plaintiff with pre-termination notice of the bases for her termination, and fails to provide any facts supporting its contention, one way or the other.  Instead, Defendant responds that Plaintiff "was aware of her gross insubordination, disobedience of direct orders, and neglect of job duty prior to the date of her termination." (*Id.*)

25.     Defendant has refused to supplement its response, and asserted that Interrogatory No. 6 is "not a proper subject for discovery."  (Exh. E, at p. 3.)

26.     However, Interrogatory No. 6 is directly relevant to Plaintiff's due process claim. Plaintiff contends that, in advance of her termination, she was entitled to receive oral or written notice of Defendant's reasons for her termination, an explanation of the evidence supporting Defendant's proposed termination decision, and an opportunity to respond.  *See Andrekovich v. Chenoga*, 2:11-cv-1364, 2012 WL 3231022 (W.D. Pa. Aug. 6, 2012) ("Notice and an

opportunity to respond are the essential requirements of due process and any pre-suspension or pre-termination hearing. Loudermill 570 U.S. at 546.") (Cercone, J.)

27.     Accordingly, Plaintiff is entitled to a complete response to Interrogatory No. 6.

***Interrogatories Nos. 7-11***

28.     In Plaintiff's termination Notice, Defendant claimed that Plaintiff was being terminated for "gross insubordination," "disobedience of direct orders," and "neglect of official duties." (ECF Doc. 1, at ¶ 62, Exh. F.)

29.     Interrogatories 7-9 seek Defendant's statement of all alleged facts supporting its claim that Plaintiff engaged in "gross insubordination," "disobedience of direct orders," and "neglect of official duties," including witnesses to those alleged facts.  (Exh. B.)

30.     Interrogatories 10-11 seek Defendant's information as to whether Plaintiff received a reprimand of any sort during her employment with Defendant.  (*Id.*)

31.     Defendant stated no objection to Interrogatories 7-9, but asserted an (untimely) objection that Interrogatories 10-11 were "overbroad."  (Exh. C.)

32.     Instead of providing complete responses to Interrogatories 7-9, Defendant vaguely refers to a set of unspecified events that comprise Plaintiff alleged misconduct.  Defendant's responses include no specific facts, no dates, no locations, and no identification of witnesses, *i.e.*, no other details that would allow Plaintiff to test the veracity of Defendant's responses. (*Id.*)

33.     Further, Defendant expressly states that each of its responses to Interrogatories 7-9 are incomplete, claiming that Plaintiff's alleged misconduct "is not limited to" the events listed. (*Id.*)

34.     Likewise, Defendant refuses to provide any information as to whether Plaintiff was reprimanded, formally or informally, at any point prior to her termination.  Instead,

Defendant vaguely asserts that Plaintiff was "made aware of" the events that are vaguely described in response to Interrogatories 7-9.

35.     In essence, Defendant's counsel has told Plaintiff to "go take a deposition" if she wants more detail.

36.     However, Rule 33 of the Federal Rules of Civil Procedure entitles Plaintiff to a complete response, rather than a directive from opposing counsel. Indeed, "[t]he general rule is that answers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions, or other documents." *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992)(noting that "even reference to sworn deposition testimony is an insufficient response to an interrogatory").

37.     Plaintiff is therefore entitled to know the "factual content" of Defendant's responses "with a reasonable degree of precision." *Martin v. Easton Pub. Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980) (noting that a party "cannot answer one interrogatory simply by referring defendants to another equally unresponsive answer.")

***Interrogatory No. 12***

38.     In Interrogatory 12, Plaintiff sought Defendant's information regarding other police officers who, unlike Plaintiff, had received any formal discipline.

39.     Defendant provided no responses to Interrogatory No. 12, and instead stated an (untimely) objection that it is "overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence."

40.     However, the purpose of Interrogatory 12 is clearly intended to lead to the discovery of admissible evidence, as it relates to Defendant's response to other Mt. Oliver Borough police officer's alleged misconduct.  Plaintiff has alleged that, as a woman who filed

EEOC charges, she was treated less favorably than her male co-workers who did not similarly complain.

41.    Such information regarding Plaintiff's "comparators" is clearly within the scope of permissible discovery.  *See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 521 (3d Cir. 2003) ("A Plaintiff alleging employment discrimination may challenge the employer's proffered explanation by showing 'that the employer treated other, similarly situated persons out of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons.'"); *Fuentes v. Perskie*, 32 F.3d 759, 766 (3d Cir. 1994) (discrimination plaintiff may summary judgment by showing that individuals outside the protected class were treated more favorably or that the employer has discriminated against other members of the protected class); *Chiaradonna v. Rosemont Coll.*, CIV.A. 06-1015, 2006 WL 3742777 (E.D. Pa. Dec. 11, 2006) (ordering disclosure of comparator discipline files in discrimination case).  *See also Miler v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000) (discovery of comparator data for prior five years appropriate).

42.    In subsequent correspondence, Defendant asserted that the current Chief of Police—Matthew Juzwick—was not involved in prior instances of discipline, and that no current representative of Defendant has information regarding prior police discipline.

43.    However, Defendant clearly did not investigate the issue.  Indeed, Defendant's counsel's correspondence shows that its "investigation" of other instances of discipline lasted n more than 30 minutes.  (*See* Exh. F, at p. 3) (reflecting time-stamped discovery correspondence). Defendant did not review personnel files, ask any current police officers, ask any other members

of the Mt. Oliver council, or take any other action to learn the relevant factual information responsive to Interrogatory 12.

44.     Moreover, Defendant's statement that it has no information regarding prior discipline is extremely implausible.  Indeed, former President of Mt. Oliver Borough Council— one of the individuals who signed Plaintiff's termination notice—alleged an incredible array of police misconduct as far back as 2009.  (*See Michener v. The Burough* [sic] *of Mount Oliver, et al.*, 2:11-cv-00746-GLL, ECF Doc. No. 20, at 14-15 (W.D. Pa. 2011) (describing Michener's allegations that Mt. Oliver Borough police threatened, harassed and intimidated her).

45.     Plaintiff is entitled to Defendant's complete response, under oath and supported by the responding parties' signature, to Interrogatory No. 12.

***Defendant's Document Production***

*RFPs 17-19.*

46.     In Requests for Production ("RFP") Nos. 17-19, Plaintiff asked for correspondence (including emails) from any individual who played a role in the decision to terminate Plaintiff, that (i) relate to or address Plaintiff's employment with Defendant, or (ii) contain any of the limited and highly relevant search terms identified by Plaintiff. (Exh. B.)

47.     To be clear, Plaintiff's RFPs 17-19 were not limited to those communications that specifically addressed Plaintiff's termination.  Rather, they were limited to communications that were *sent or received* by the decision makers.

48.     In response to RFP 17, Defendant stated an (untimely) objection that RFP 17 seeks privileged communications. (Exh. C.)  Defendant then produced a small collection of emails from the first few months of 2013, and only those that specifically relate to Plaintiff's termination.

49.     In response to RFPs 18-19, Defendant stated (untimely) objections that the RFPs were overly broad and unduly burdensome, and not calculated to lead to the discovery of admissible evidence.  Defendant then referred back to the emails produced in response to RFP 17, and did not supplement that production.

50.     Defendant did not object that RFPs 18-19 sought inaccessible data, did not assert that Defendant lacked proper access to the relevant custodian of emails, and did not complain that the search terms set forth in RFP 19 were too broad to allow for efficient review and production.

51.     Moreover, Defendant produced no text messages or other non-email correspondence; no communications prior to 2013; no communications that refer to Plaintiff outside of the context of her termination; and no documents containing any of the relevant search terms.

52.     Notwithstanding its boilerplate and untimely objections, Defendant cannot justify refusing to produce emails that refer to Plaintiff, or that include any of the relevant search terms. The documents sought by Plaintiff, beyond emails from 2013 that specifically address Plaintiff's termination, are relevant for several reasons.

53.     First, the documents requested are plainly relevant to Plaintiff's claims.  In her Complaint, Plaintiff alleges that Defendant retaliated against her for filing charges with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") in November 2012.  (ECF Doc. 1, ¶¶ 27-36.)  Plaintiff then alleges that she was promptly terminated after filing additional EEOC and PHRC charges in 2013.  On that basis alone, emails that discuss or refer to Plaintiff outside of the termination decision are relevant.

54.     Second, Plaintiff is entitled to discover how the relevant decision makers communicated about her, even before her termination.  For example, if the decision makers had nothing but positive things to say about Plaintiff until her protected activity, that fact tends to make it more likely that her termination was in retaliation for that protected activity.

55.     Third, Plaintiff has also alleged that Defendant treated female police officers less favorably than male officers.  Thus, if the relevant decision makers made stereotyping comments regarding Plaintiff, or comments that relate to her sex or gender, Plaintiff is entitled to review those communications.

56.     In short, Defendant has unilaterally decided what documents are relevant, and what documents Plaintiff gets to review.  To the contrary, Defendant should be compelled to produce all responsive documents, including all responsive emails, so that Plaintiff can properly prosecute her case.

### *Conclusion*

57.     The Federal Rules of Civil Procedure permit broad discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." F.R.C.P. 26(b)(1).

58.     To that end, relevance for discovery purposes is broadly and liberally construed. *Hickman Taylor*, 329 U.S. 495, 501, 507 (1947).  Thus parties are entitled to discovery on "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (all relevant material is discoverable absent assertion of an evidentiary privilege).

59.     Here, Defendant has unjustifiably refused to disclose all relevant information.  As a result, Defendant's conduct has prejudiced Plaintiff in her ability to complete all discovery, including depositions, necessary for Plaintiff to support her claims in this case.

60.     Accordingly, Plaintiff requests that this Court order Defendant to amend and supplement its interrogatory responses, and produce all responsive documents, within seven (7) days of this Court's order.

61.     Further, Plaintiff requests that this Court extend the period to conclude fact discovery for the limited purpose of allowing Plaintiff to complete depositions, including those depositions that have been scheduled, and postponed, as a result of Defendant's failure to produce all relevant information and documents.

62.     A proposed order is submitted with this Motion.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion to Compel and Continue Period to Complete Fact Discovery for a Limited Purpose.

Date:  October 12, 2014

> /s/ Vincent J. Mersich
> Vincent James Mersich (PA I.D. No. 310971)
> Law Office of Vincent J. Mersich, LLC
> 400 Market Street
> Elizabeth, PA 15037
> Phone: 412.384.8803 / 724.493.5201
> Fax:    412.384.8805
> Email: vincent.mersich@outlook.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October 2014, a copy of the foregoing document was filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*Vincent J. Mersich*
Vincent J. Mersich
